## CARVER GIN & MACHINE CO. *v.* S. B. WILMOTH.

**Contract — Construction — Commissions Payable on Sales Under.**

> A contract between parties providing for the payment of a certain per cent. "commission on sales made, when the order is accepted, and such as are cash sales, commissions to be paid when the money is received from the customer, and on that portion represented by notes when the notes are respectively collected," is held to mean that commissions are payable only when the collection of the price of the articles sold is made.[1]

**Instructions — Variance with contract.**

> Instructions as to the payment of commissions under a contract that do not contain the provisions therefor as set out in same are improper.[2]

This was an action in assumpsit on an account of $301 upon which plaintiff recovered judgment with interest. The twelfth page of contract referred to in the opinion is as follows: "The

---

[1]

The court has the right to impose, as a condition to granting a continuance, that the applicant shall consent to the taking and reading of the deposition of a witness, whose deposition would be unauthorized except by such consent. Hamilton *v.* Cooper,     Walk. 542.

Notwithstanding the statute provides that actions of replevin are to be tried at the first term, yet continuance should be granted in replevin cases, just the same as in other actions; and it will, therefore, be error for the court to refuse to *hear* an application for a continuance in such a case. Marshall *v.* Fulgham, 4 How. 216.

A written contract is to be construed by the court and not by the jury. Fairly *v.* Fairly, 38 Miss. 280.

Contracts are presumed to be made with reference to the law in existence at the time they are made. Hence, a promise to pay money, without stating what kind, will mean legal tender. Carter *v.* Cox, 44 Miss. 148.

A contract must be interpreted in the light of the circumstances and conditions under which it was entered into. Tufts *v.* Greenwald, 66 Miss. 360, 6 So. 156; Pratt *v.* Cotton Co., 51 Miss. 470.

In construing contracts of doubtful meaning, testimony is competent to show the relation of the parties to each other, and the subject and the surrounding circumstances, as aids to the interpretation of the language employed, so as to ascertain the intent. Gillenwaters *v.* Miller, 49 Miss. 150.

A cotton buyer was employed "for the cotton season of 1897–98. Said season to begin September 1, 1897, and to last until May 1, 1898," the principal agreeing to pay him "$800 for the season." Early in October the buyer was paid $100 as salary for September. *Held*, that the contract was determined to be divisible by the construction placed on it by the parties themselves. Ramsay *v.* Brown, 77 Miss. 124, 25 So. 151.

party of the first part agrees to furnish the party of the second part with circulars, blank orders, and notes, and to furnish said machinery to fill orders if taken in conformity with this agreement, so long as they have any of them on hand not engaged, reserving the right to reject any order which they may deem it best for their interest not to fill, and hereby authorize said party of the second part to sell said machinery at the regular prices and terms named in the printed list issued by said party of the first part, for the ensuing season, the purchaser paying freight from the factory," and the letter of May 22, 1882, is in the following words: "Memphis, Tenn., May 22, 1882.— Col. S. B. Wilmoth, Greenwood, Miss. Dear Sir.— Yours 18th at hand. We have tendered our agency at Kosciusko and Granada, but as yet have no reply. We shall

The court may refuse instructions when there is no evidence applicable to them, and it is not error to refuse a charge, correct in principle, unless the party asking it show the evidence to which it is applicable. Newman v. Foster, 3 How. 383; Loring v. Willis, 4 How. 383; Miles v. Myers, Walk. 379.

Instructions must be applicable to the evidence and pertinent to the questions raised by it, and if not they should be refused, however correct they may be as abstract propositions of law; and if inapplicable and impertinent, the giving of them will be error. O'Reilly v. Hendricks, 2 S. & M. 388; Payne v. Green, 10 S. & M. 507; Wiggins v. McGimpsey, 13 S. & M. 532; Hyde v. Finley, 4 Cush. 468; Wright v. Clarke, 34 Miss. 116; Lombard v. Martin, 39 Miss. 147; Herndon v. Bryant, 39 Miss. 335; Dennis v. McLaurin, 31 Miss. 606; Fairly v. Fairly, 38 Miss. 280; N. O., J. & G. N. R. Co. v. Statham, 42 Miss. 607.

It is the duty of the court by instructions to construe a writing, and not refer its meaning to the jury. Insurance Co. v. Herron, 56 Miss. 643; Railroad Co. v. Anderson, 51 Miss. 829.

And in an action based upon a trust deed its construction is for the court, and an instruction submitting it to be construed by the jury is erroneous. Bowman v. Roberts, 58 Miss. 126; Whitney v. Cook, 53 Miss. 551.

It is the right and duty of the court to modify instructions so as to make them conform to the law. Wilson v. Kohlheim, 46 Miss. 346; White v. State, 52 Miss. 216; Scott v. State, 56 Miss. 287.

And it is not error for the Circuit Court, of its own motion, to give an instruction in modification or explanation of those prepared by counsel. (Watkins v. State, 60 Miss. 323, distinguished.) Warden v. State, 60 Miss. 638.

But instructions based upon a state of facts should not be modified unless the facts likewise sustain the modifications. Shelby v. Offutt, 51 Miss. 128.

The refusal of an instruction containing a certain qualification, and then giving it with the qualification omitted, against the objection of the party asking it, does not contravene to his prejudice the statute forbidding the voluntary giving of instructions by the court. Snowden v. State, 62 Miss. 100.

not offer any other agencies in that section.    It will suit us to pay
you 15 per cent. on your sales with acceptable orders and will pay
you one-half commission on all Gins and of our manufacture not
sold by our agents that we ship into the counties assigned to you
and when necessary we shall expect you to call and see any of our
customers you sell who need assistance in starting up.    Prospects
are good.    How many catalogues do you want.    Yours truly,
Jno. D. Milburn, Pres." Plaintiff testified that one Wm. Ray
said, " You caused me to buy a gin."    This was sold to Ray in
the fall of 1881, and commission was claimed on same of $40,
and he claimed commission on all orders sold by him, amounting
to $391, as shown by itemized statement, and upon which
credits for cash furnished and rebates amounted to $90.    De-
fendant filed a counter-affidavit, showing that commissions were
due on $940 only, that being the amount of money collected on
sales, which at 15 per cent. amounted to $141, of which cash had
been paid of $85, leaving $56 due.    The first and second instruc-
tions are as follows:    " 1. If the jury believe from the evidence
that S. B. Wilmoth was employed by the defendants in 1881 and
1882 to sell their machinery under a contract that he was to
receive 10 per cent. on the sales made by him prior to May 22,
1882, and 15 per cent. on the sales made by him after that time,
and if they further believe that said Wilmoth sold or caused to be
sold the gins, feeders, etc., of defendants mentioned in the
account sued on, and that the orders for the same were accepted
by the defendant then they will find for the plaintiff the amount
of said account with interest at 6 per cent. from the time each
of said gins were delivered."    " 2. That if the plaintiff was em-
ployed by defendants to sell their machinery prior to May 22,
1883, at a commission of 10 per cent. on his sales and if they fur-
ther believe that he sold to Wm. Ray or induced said Ray to pur-
chase from defendant gins, feeders, etc., then plaintiff is entitled
to his commission on that sale whether the order was made
by Wilmoth or by Ray."    First instruction refused for defendant
is as follows:    " 1. The court instructs the jury that plaintiff
is only entitled to recover for machines sold by him, for which the
price has actually been paid and it is incumbent on plaintiff to
prove such payment and the jury will so find."    Second and third
instructions, which were modified, are as follows:    2. " That
plaintiff is entitled to recover his commission on money actually

paid to defendant or orders accepted by defendants and only when he has complied with the terms of his contract with defendants and it is the duty of jurors to enforce by their verdict the faithful performance of contracts which come before them with impartiality." 3. "In no event is plaintiff entitled to recover on sales of 1881 unless on orders sent by him to defendants or sales made or caused to be made, and the jury will so find." These were modified by the court by striking out of the second the words, "or orders accepted by defendants" and out of the third, the words " or sales made or caused to be made."

From the judgment for plaintiffs defendant appeals.

APPEALED from Circuit Court, Holmes county, C. H. CAMP-BELL, Judge.

Reversed and new trial awarded, April 28, 1884.

*Attorneys for appellant, Gwin & Noel.*

*Attorneys for appellee, Hooker & Wilson.*

Brief of Gwin & Noel:

There was but little objection made to the introduction of evidence in the court below, and, in consequence, the record is incumbered by considerable immaterial matter, especially in the way of letters, some of which are, however, of considerable importance. The grounds upon which a reversal is asked and expected in this case are presented in two divisions.

Because it was error to allow appellee 15 per cent. commissions, under the contract of 1882, on alleged sales in which the acceptance of the machinery was refused, nothing was collected, and in which appellee had neglected to take any writing from, or to make any binding obligation with, the alleged purchasers; such allowance amounted to $205 interest out of the $301 for which judgment was rendered.

Because it was error to allow appellee 10 per cent. commissions on the gin ordered direct from appellants by Wm. Ray in 1881, at which time appellee had no exclusive territory and was only entitled to 10 per cent. commissions on acceptable orders sent, $40 and interest was thus erroneously allowed.   *   *   *

The contract bears its own interpretation on its face. The rulings that allowed 15 per cent. commissions "on orders not filled" on machinery "not delivered," on machinery "returned," "on sales represented by notes when the notes are not collected," or "any discounts made for cash or other cause," and in fact the rulings that held otherwise than that "commissions shall only be calculated on the net proceeds" of collections, were not a construction of the contract, but were an abrogation of its only section in which commissions were allowed and fixed, and an elimination of more than half of its words. (See section 14 of contract.)

From the inevitable construction of this section, in the trial below, appellee took refuge under the specious pretext that the terms of the contract were altered by a letter dated May 22, 1882, and signed "J. D. Milburn, Pt.;" and then and there successfully endeavored to narrow down the correspondence had on this subject to that one letter which was written on the same day that was another signed by appellant and enclosing the contracts to appellee. This, too, in the face of one of the instructions contained in the contract and expressly made a part of, and which reads as follows: "Our contracts are intended to specify the exact agreement with agents, and we will not be responsible for any statements, promises, or representations claimed to have been made to them outside of this contract, unless the same is in writing from us or our contracting agent." There is no testimony that Millburn was its contracting agent. He was its president.

As a formal written contract, signed by both parties, is presumed to contain a full and complete expression of the will of both parties in regard to the subject-matter, to the exclusion and nullification of all prior agreements, verbal or written, with which it is in conflict, and as its true date is the day when it received the approval of both, which in this case was June 2, 1882, we would probably be safe in totally disregarding all correspondence prior to that date.

The correspondence prior to June 2, 1882, under a fair construction, will defeat appellee's theory, and fully sustain the plainly intended meaning of section 14. * * *

On May 22, 1882, "J. D. Milburn, Pt." acknowledged the receipt of appellee's letter of May 18, 1882, and wrote, "It will suit us to pay you 15 per cent. on your sales with acceptable orders, and will pay you one-half commissions on all gins of our manufacture.

not sold by our agents, that we ship into counties we assign you, and when necessary we shall expect you to call and see any of our customers you may sell who need assistance in starting up." This is the letter, which, according to the court below, revolutionized the contract. It will be noticed that this letter makes the one-half commissions payable in the same sentence and under the same circumstances as the 15 per cent. commissions, and when it is written in the agreement, commissions are only collectible when machinery is " paid for " just as with the 15 per cent. in section 14. On the same day of previous letter, May 22, 1882, appellant wrote to appellee over its own signature, saying, " Hand you herewith contracts for signature which please sign and return to us. Also fill in blanks at the bottom of first page, saying what territory you want on one of them." On June 1, 1882, appellee replied, saying, " I hand you contracts signed. I changed the contracts as my term of agency will expire November 1st, instead of December 31st. I will however look after your interests of collecting and forwarding or in fact any other interests of company until January," and added a postscript stating, " I want this county, Carroll, Montgomery, Attala, Holmes, you may add Yazoo if that county is not taken, will work it up if I can." To this appellant replied, June 2, 1882, saying, " Enclosed find signed contract. * * * We express you 100 of our new catalogues, blank orders, notes," etc. The receipt of this was acknowledged by appellee on June 13, 1882, and he then expressed regret that Holmes county had not been put in his district, but made no other objection to contract as it then was and now is. * * *

Relying on these facts, we confidently submit that the correspondence neither does, nor was expected to, vary the terms of the contract; and that either under the correspondence or under the contract, appellee's commissions are restricted to 15 per cent. on actual collections. * * *

Notwithstanding all the facts, which were hardly questioned, the instructions for plaintiff really directed the jury to find for plaintiff. As shown by the motion for a new trial, defendant's instructions were so modified as to conform to that idea. If appellee by letter directed appellant to ship machinery to a certain party, which was about all the ordering he did, and appellant acknowledged its receipt, saying it should receive attention, then, under plaintiff's first instruction, he was entitled to his 15 per cent.

commission on the value of gins as charged, without reference to the value the proof might establish, and the jury would be compelled to allow his account as rendered with 6 per cent. interest. * * *

We will now briefly dispose of the second heading, which concerns only one gin, that purchased by Wm. Ray in 1881.

The correspondence between appellant and Wm. Ray shows that the whole transaction was carried on directly between them, and that the gin was sold at the lowest cash figures, and that appellee was wholly unknown and unmentioned in their transactions, and that appellant never heard of him in that connection until it was all over.

Brief of Hooker & Wilson:

This was a proceeding commenced by appellee by attachment, to recover of the defendants, a (soulless and) nonresident corporation, his commissions on machinery sold for them. A part of the account is admitted to be due. Appellee had two contracts with appellants, the last contract dated May 22, 1882. Under the latter contract he was to receive 15 per cent. commissions. Under the first contract under which he worked until May 22, 1882, he was to receive 10 per cent. commissions.

There was only commissions claimed on this account on one sale that was made to Mr. Ray of Carroll county, under contract prior to May 22, 1882. Evidence shows that while the order was made by Mr. Ray, the sale was in fact made by appellee. Hearing that Mr. Ray was desirous of buying a gin, he went to see him on his plantation in LeFlore county, and fully canvassed the matter, representing to him the many and excellent virtues of appellant's gins, and left with him the circulars, picturing their manifold excellencies. This visit and conversations and representations bore their legitimate fruit, and after some delay (perhaps to let the effects of the fervid eloquence of appellee die away and give his imagination the less and his judgment the more opportunity to assert itself, and examine more carefully into the statements of the agent), Capt. Ray himself makes the order to the company for the gin. It was in his territory and by virtue of the efforts of appellee that the gin was sold. * * *

There certainly can be nothing wrong in the instruction on this point, and the evidence shows that it was through him that the

sale was made.    The instruction on this point is the second instruction for plaintiff.    It is certainly a correct announcement of the law.    The second contract, as before stated, was a written and printed contract.    The whole contest has narrowed itself down to this, that appellants admit the sales, admit that they were acceptable orders, do not claim that they have been in any way damaged or sustained any loss by reason of the breach of the agreement, but simply that they have not collected all that the machinery sold for. In other words, that Wilmoth's commissions were limited to the actual collections made by them, and not upon the acceptable orders.    And they base this upon paragraph 14 of the agreement.

The court will notice that the words " when the orders accepted " is an interlineation in writing in the printed contract.    The rule of construction is that in documents partly written and partly printed that the writing shall prevail, and another rule is that it shall be construed so as to give effect to the whole unless such construction is manifestly opposed to the intention of the parties.

As originally printed, commissions were only allowed " only on machinery delivered and not on orders not filled nor on machinery returned."    The commissions on cash sales to be paid when collection is made from the purchaser, and the commissions on such part of the sales as were represented by notes to be paid when the notes are respectively collected, and to bear the same rate of interest as the notes.    The words " when orders accepted " fixes a different time for the payment of the commissions.    Under the plain words of the contract he is to receive " 15 per cent. from the list price on each sale of said machinery " (when?) " when the orders are accepted."    *    *    *    They have expressly agreed to allow the commissions " when the orders are accepted " — some reason must be given for this interlineation, and no other reason could be given for the insertion of the words.    If it is contended that they are inserted as a *description* of the orders on which commissions would be allowed, we say that such is not the ordinary and grammatical construction, and further that there are descriptive words further along in the clause as to the orders upon which commissions would be allowed.    To say that they are words of description would do violence to the ordinary sense of the words, to the rules of grammar, and is rendered highly improper by the fact that other words of description are used in a subsequent part of the clause.    Under the grammatical construction of the clause, .

appellee was entitled to receive " 15 per cent. from the list prices on each sale of said machinery when the orders accepted, and 10 per cent. on presses and 15 per cent. of the list prices on repairs sold," etc. Such is the plain reading, and no ingenuity can change or alter the plain and obvious meaning of the words. In the letter of May 22, 1882, from appellant to Wilmoth, enclosing the contract, they say, " It will suit us to pay you 15 per cent. on your sales with acceptable orders." This letter and the contract embodying the same idea was, as Wilmoth states, the inducement for him to sign the contract and go to work for the company.     *     *     *

We have not been favored with brief for appellant. It has not yet been filed in this court.

There were three instructions asked for by plaintiffs. The second instruction has been adverted to already. The first and third can be considered together. They simply assert that if plaintiff was working for defendant under the contract proven, and sold the gins, etc., testified to, and the defendant accepted the orders for same (whether printed on their blanks or not) and shipped the gins, etc., to the parties purchasing them, he was entitled to recover. On the other hand, defendant attempted to have the commissions limited to the actual collections made by them on the sales, although they had refused to give him any statements or make any settlements with him.


OPINION.— CAMPBELL, C. J., delivered the opinion of the court:

Our interpretation of the contract of 22d May, 1882, under which appellee claims all of the account sued on, except the first item, is that he was not to be paid commissions until the gin and other things sold were paid for. The letter of the appellant of 22d May, 1882, did not modify the contract as to when the appellee was to be paid commissions. It had reference only to what sales he was to have commissions on and not to when he was to receive them. That was prescribed in unmistakable terms by the contract entered into on the day of the date of that letter. The expression " sales with acceptable orders " has reference to the acceptability of the orders to the appellant, and its acceptance by it, for by the twelfth paragraph of the contract it expressly reserved the right " to reject any order which they may deem it for their interest not

to fill." This furnishes the key to the meaning of the expression "Sales with acceptable orders," which occurs in some of the letters between the parties.

The fourteenth paragraph of the contract is, "14. The party of the first part agrees to allow the party of the second part 15 per cent. from the list prices on each sale of said machinery, when the order is accepted, and 15 per cent. of the list price on repairs sold, and 10 per cent. on presses * * * but only on machinery delivered, and not on orders not filled, nor on machinery returned * * *. The commissions on cash sales to be paid when collection is made from the customer, and the commissions on such portion of the sales represented by notes to be paid when the notes are respectively collected, and to bear the same rate of interest as the notes." From which it is manifest that the time when the appellee became entitled to be paid his commissions was the collection of the price of the articles sold.

There is nothing in the evidence to authorize the instruction that the appellee was entitled to 10 per cent. on the sale to Wm. Ray.

It follows from these views that the first and second instructions for the plaintiff below should not have been given, and that the first asked by defendant should have been given, and that the second and third instructions asked by the defendant should not have been modified, but should have been given as asked. The third instruction for plaintiff should have added to it the words, "for which collection has been made" or other equivalent words, so as to limit the recovery of commissions to money collected on the sales.

No objection was made in the court below to the refusal of the first instruction asked by the defendant, and on well-settled practice, we would not notice that instruction were it not that the judgment must be reversed on other grounds.

Judgment *reversed*, and new trial granted.